UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ERIKA MABES, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:21-cv-02062-JRS-MKK |
| | ) | |
| ANGELA MCFEELEY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

### ORDER

Defendants Angela McFeeley, Natasha Davis, Courtney Oakes, Samantha King, Hannah Lyman, Kristin Miller, Courtney Crowe, and Jaclyn Allemon ("DCS Defendants") have renewed their motion for leave to amend their answer to include three additional affirmative defenses, Dkt. [157]. For the reasons that follow, the renewed motion is **GRANTED**.

### I. Background

Although the facts of this case are still developing, to the extent necessary to resolve the present motion they are put forth as follows. Plaintiffs Erika Mabes and Brian Mabes, on behalf of themselves and their minor children, ("Plaintiffs" or "the Mabes"), allege that they were deprived of their Fourth and Fourteenth Amendment rights in a sequence of events that began when the Indiana Department of Child Services ("DCS"), acting in part on advice from a doctor at Riley Hospital for Children, Dr. Shannon Thompson, took custody of the Mabes' children without prior court order. (Dkt. 1). They initiated this Section 1983 litigation on July 19, 2021,

against individual employees with the Indiana Hendricks County Department of Child Services (the "DCS Defendants"), Dr. Thompson ("Defendant Thompson"), and Indiana University Health, Inc.[1] (*Id.*). In late September 2021, the three groups of Defendants filed motions to dismiss in response to the Plaintiffs' Complaint. (Dkt. 26, 28, 31). As relevant to the present motion, the DCS Defendants asserted claim and issue preclusion as grounds for dismissal, (Dkt. 107 at 6), and Defendant Thompson asserted absolute immunity, (*id.* at 16).

On October 5, 2021, the Court approved the parties' agreed-upon case management plan and set a date of December 20, 2021 for amending all pleadings. (Dkt. 39 at 5). On September 22, 2022, the Court ruled on the Defendants' motions to dismiss. (Dkt. 107). As to the claim and issue preclusion grounds, the Court noted that such affirmative defenses should "be raised in a responsive pleading" and declined to dismiss the Plaintiffs' Complaint because "there is simply too little in the pleadings for the Court to determine, at this early stage, whether the DCS Defendants' preclusion defenses have merit." (*Id.* at 7, 9). As for Defendant Thompson's absolute immunity argument, the Court engaged with that ground at length, (*id.* at 22-27), defined its applicability to the case at hand, (*id.* at 26), and even granted Defendant Thompson's invocation of it in part, (*id.* at 27).

The DCS Defendants filed their Answer on October 3, 2022. (Dkt. 108). Defendant Thompson filed her answer on October 10, 2022. (Dkt. 112). Absent, however, from the DCS Defendants' answer were the affirmative defenses of claim

---

[1] Indiana University Health, Inc. was dismissed as a Defendant on September 22, 2022. (Dkt. 107).

and issue preclusion and absolute immunity. The DCS Defendants then had a change of counsel, with their present counsel appearing on November 29, 2022, (Dkt. 124), and prior counsel withdrawing on December 2, 2022, (Dkt. 128).

On April 14, 2023, the DCS Defendants filed a motion requesting that the Court grant them leave to amend their answer to add three additional affirmative defenses: claim preclusion, issue preclusion, and absolute immunity. (Dkt. 146). Defendants argued that those affirmative defenses related to two key issues in this litigation: "information provided to a court by the DCS Defendants stemming from DCS's assessment (absolute immunity) and an Agreed Entry signed by the Plaintiffs (claim preclusion and issue preclusion)." (Dkt. 151 at 1-2). Both the DCS Defendants' request and Plaintiffs' objection were argued under Rule 15, which governs amendments to pleadings. (*See* Dkt. 146 at 1-2; Dkt. 150 at 1-2). Neither party addressed Rule 16(b)(4)'s good cause standard.

This absence of discussion was problematic because in addition to the motions for deadline extensions filed prior to the Court's order on the motions to dismiss, (Dkt. 89, 105), the Court had granted an unopposed motion for deadlines extensions filed shortly after the Court's order on the motion to dismiss, (Dkt. 114). None of these requested extensions to the CMP included a request to extend the deadline for amending pleadings. (*See* Dkt. 87, 104, 111). And just prior to the DCS Defendants' April 14th motion, on March 29, 2023, Plaintiffs had filed an unopposed request to extend various case management deadlines, which, again, did not include extending the deadline for amending pleadings, (Dkt. 140).

3

Accordingly, the Court denied the DCS Defendants' April 14th motion without prejudice, finding that, because "neither side addresse[d] diligence in their briefing," the Court could not conclude on the record then before it whether the Defendants had shown good cause under Rule 16(b)(4) for amending their answer after the scheduling order deadline. (Dkt. 156 at 4-5).

Shortly thereafter, the DCS Defendants renewed their request to assert the three affirmative defenses with this present motion, Dkt. [157]. Plaintiffs objected, arguing that the Defendants have failed to demonstrate good cause for amending their answer. (Dkt. 162). Defendants filed a reply on May 12, 2023. (Dkt. 163). The motion is now ripe and ready for ruling.

## II. Legal Standard

Rule 15 of the Federal Rules of Civil Procedure governs amendments of pleadings, noting that "a party may amend its pleading only with . . . the court's leave," and courts "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Rule 16 of the Federal Rules of Civil Procedure, on the other hand, governs scheduling orders, stating "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). These Rules are to be "construed to provide for the 'just, speedy, and inexpensive determination of every action' on its merits." *Stevo v. Frasor*, 662 F.3d 880, 887 (7th Cir. 2011) (quoting Fed. R. Civ. P. 1).

The Seventh Circuit has acknowledged "some tension" between Rule 15(a)(2) and Rule 16(b)(4). *Alioto v. Town of Lisbon*, 651 F.3d 715, 719 (7th Cir. 2011). The

interplay of these two rules demands that the Court balance both Rule 15's liberal policy that cases should be decided on the merits and not on the basis of technicalities, *Stern v. United States Gypsum, Inc.*, 547 F.2d 1329, 1334 (7th Cir. 1977), and Rule 16's aims "to prevent parties from delaying or procrastinating and to keep the case moving toward trial," *Alioto*, 651 F.3d at 720 (internal quotation marks omitted). As such, motions seeking leave to amend pleadings after the deadline to do so are often analyzed through a so-called "two-step process." *Id.* at 719.

The Seventh Circuit has consistently used discretionary language when describing a court's implementation of the two-step process. *See Cage v. Harper*, 42 F.4th 734, 743 (7th Cir. 2022) ("Given this tension [between Rules 15 and 16], we have held that a district court may 'apply the heightened good-cause standard of Rule 16(b)(4) before considering whether the requirements of Rule 15(a)(2) were satisfied.'") (quoting *Alitoto*, 651 at 719); *Allen v. Brown Advisory, LLC*, 41 F.4th 843, 852 (7th Cir. 2022) ("entitled"); *Alitoto*, 651 F.3d at 719 ("the district court was entitled to apply the heightened good-cause standard of Rule 16(b)(4) before considering whether the requirements of Rule 15(a)(2) were satisfied").[2] Such

---

[2] The Court acknowledges that the Seventh Circuit at times has described the two-step process in more draconian terms. *E.g.*, *Peters v. Wal-Mart Stores E., LP*, 512 F. App'x 622, 627 (7th Cir. 2013) ("Because the deadline for amending the pleadings had passed more than a year and half earlier, Peters first had to show good cause to modify the scheduling order; only then does the general standard of Rule 15(a)(2) apply."). Until the Seventh Circuit definitely rules otherwise, however, the Court finds it appropriate to exercise *its* discretion in accordance with the discretionary language consistently used by the Seventh Circuit, as the Court finds that this approach reflects and preserves the plain meaning and spirit of Rule 15(a)(2) and Rule 16(b). *See G. Heileman Brewing Co. v. Joseph Oat Corp.*,

discretionary language conforms with the fact that, ultimately, a request to allow a pleading to be amended is addressed to the judge's discretion. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Glover v. Carr*, 949 F.3d 364, 367-68 (7th Cir. 2020).

### III. Discussion

The DCS Defendants ask for leave to amend their pleadings after the deadline to do so. (Dkt. 157).

Despite this Court's observation on the discretionary nature of adhering to the "two-step process," the Court will proceed to use the two-step process' well-established structure. The Court does so for two reasons. First, because the Court denied the DCS Defendants initial motion for leave "for a failure to demonstrate good cause under Rule 16(b)(4)," the analysis begins by addressing whether the DCS Defendants' renewed motion made "[an] attempt to demonstrate due diligence in seeking this amendment." (Dkt. 156 at 4). Second, much of Plaintiffs' argument against the DCS Defendants' belated motion indicates they will not face any prejudice from the belated assertion of these affirmative defenses.

#### A.

In their renewed motion, the DCS Defendants have not provided the Court with what would be considered a demonstration of their diligence in seeking to add these three affirmative defenses. *See Cage*, 42 F.4th at 743 ("In making a Rule 16(b) good-cause determination, the primary consideration for district courts is the

---

871 F.2d 648, 652 (7th Cir. 1989) ("There is no place in the federal civil procedural system for the proposition that rules having the force of statute, though in derogation of the common law, are to be strictly construed.").

diligence of the party seeking amendment."). A showing of good cause considers not only whether the initial deadline could not have been met, but also the moving party's diligence upon discovery of the facts that serve as the basis for the amendment.

The Court noted in the Order denying the DCS Defendants' initial motion for leave that there was a substantial gap between the DCS Defendants' request for leave and the December 20, 2021 deadline to amend that had been left unexplained. (Dkt. 156 at 4). One possible explanation, offered by neither party, was that the December 20, 2021, deadline was too strict given the DCS Defendants did not file their answer until October 3, 2022, (Dkt. 108), after the Court's resolution of their motion to dismiss. But that is not an argument raised by either party.

Nor could it have realistically been. By the time the parties had proposed the deadline to amend the pleadings on September 28, 2021, the defendants' motions to dismiss had already been filed. The parties' agreed to case management plan was entered on October 5, 2021, setting the deadline to amend the pleadings as December 20, 2021. (Dkt. 39). By the time the DCS Defendants' motion to dismiss became ripe, on November 22, 2021, (Dkt. 64), the agreed deadline to amend the pleadings that they had not yet filed was less than a month away. The Seventh Circuit has observed in this situation that the defendants "could and should have moved for an extension if they wished to preserve the opportunity for further amendments after the court rendered its decision." *Adams v. City of Indianapolis*, 742 F.3d 720, 734 (7th Cir. 2014). The parties routinely sought, and the court

7

granted, extensions of the discovery deadlines that they had agreed to in the case management plan. (Dkt. 89, 105, 105, 114, 143). Not once did the parties seek to adjust the deadline to amend the pleadings. So, as the Seventh Circuit recently put it, "it is reasonable to conclude that a [party] is not diligent when he in silence watches a deadline pass even though he has good reason to tact or seek an extension of the deadline." *Allen*, 41 F.4th at 853.

    The Court acknowledges that the DCS Defendants' answer was filed by prior counsel and this request is being made by counsel that appeared nearly two months after the Answer had been filed. (*See* Dkt. 108, 124). But even if the Court were to find this change in counsel relevant to the good cause showing, an adequate explanation has not been given as to why it took from November 29, 2022 (DCS Defendants' new counsel's appearance) until April 14, 2023 (DCS Defendants' initial motion for leave) or May 1, 2023 (DCS Defendants' renewed motion for leave) for the DCS Defendants to seek leave to add three rather significant affirmative defenses to their answer. Especially, when such defenses had been squarely raised and addressed in the Court's Order on the motions to dismiss.

    Instead, the DCS Defendants present the following explanation in this renewed motion for leave: "[a]lthough Plaintiffs' Complaint arguably provides some factual basis for asserting these defenses, the discovery depositions in this case have enhanced and clarified Plaintiffs' claims related to DCS Defendants' proposed affirmative defenses." (Dkt. 163 at 2). Of course, the Seventh Circuit has long acknowledged that "it is not unusual for parties to discovery new theories for claims

8

or defenses in the course of discovery." *Reed v. Columbia St. Mary's Hospital*, 915 F.3d 473, 479 (7th Cir. 2019); *see also Burton v. Ghosh*, 961 F.3d 960, 965 (7th Cir. 2020) ("This will often be the case where the basis for the defense is disclosed through discovery."); *Venters v. City of Delphi*, 123 F.3d 956, 967 (7th Cir. 1997) ("The pertinence of a particular defense may only become apparent after discovery, for example, in which case it would be reasonable for the court to permit the belated assertion of that defense."). But the DCS Defendants' explanation here is that discovery "*enhanced and clarified* Plaintiffs' claims related to DCS Defendants' proposed affirmative defenses," (Dkt. 163 at 2 (emphasis added)), not that discovery revealed "the basis" to assert these additional affirmative defenses, *Burton*, 961 F.3d at 965. This explanation appears to suggest that the DCS Defendants knew that Plaintiffs' claims touched on the affirmative defenses it now seeks to add, but the DCS Defendants waited for Plaintiffs to depose the DCS Defendants and for the DCS Defendants to depose the Plaintiffs. The DCS Defendants' decision to delay amending their answer until they confirmed their suspicions does not establish good cause. *See Trustmark Ins. Co. v. Gen. & Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir. 2005) (waiting to confirm "suspicions" is not indicative of diligence).

Pointing to recent depositions (that occurred March 10, 2023, March 17, 2023, and April 17, 2023) as "good cause" to justify the delay in seeking to add affirmative defenses is problematic. This is because this justification seems to run contrary to the DCS Defendants' September 2021 attempt to raise claim and issue preclusion as grounds for dismissal, (Dkt. 26), the DCS Defendants' position on their initial motion

for leave that "[t]hese issues have been at the forefront of this litigation," (Dkt. 151 at 2), and the DCS Defendants' concession in its renewed motion that "Plaintiffs' Complaint arguably provides some factual basis for asserting these defenses," (Dkt. 163 at 2). *See* Fed. R. Civ. P. 11(b); *Venters*, 123 F.3d at 968 ("Once the availability of an affirmative defense is reasonably apparent, … [t]he appropriate thing for the defendant to do, of course, is to promptly seek the court's leave to amend his answer. His failure to do risks a finding that he has waived the defense.") (internal citations omitted).

Ultimately, the DCS Defendants are not pointing to those depositions as "good cause" to justify their delay in seeking to add these amendments. Instead, they point to those depositions as indicating that they have "good cause to raise the absolute immunity defense" and "good cause to raise the issue preclusion/claim preclusion defense." (Dkt. 157 at 3, 4). The question of "good cause" under Rule 16(b), however, is not tied to whether the party has good cause to raise a particular defense. Generally speaking, Rule 16(b)(4) is looking for a "good excuse for [the party's] untimeliness." *Allen*, 41 F.4th at 853. An explanation as to *why* the party wants to add the claim or defense does not demonstrate "the diligence of the party seeking to amend." *Id.* at 852-53.

The Court emphasizes the DCS Defendants' failure to provide "good cause" to make clear the following point: it is only because "justice so requires" and "to secure the just, speedy, and inexpensive determination of [this] action" that the Court exercises its discretion and grants the DCS Defendants' motion. Fed. R. Civ. P.

10

15(a)(2) & Fed. R. Civ. P. 1.

## B.

The Court now turns to Rule 15: do the interests of justice weigh in favor of granting the motion? Here, of course, the DCS Defendants are seeking to add absolute immunity, claim preclusion, and issue preclusion as affirmative defenses to their answer. (Dkt. 157). Federal Rule of Civil Procedure 8(c) requires that affirmative defenses must be included as part of the answer. Absolute immunity, claim preclusion, and issue preclusion are affirmative defenses that must be affirmatively stated in the answer. *Tully v. Barada*, 599 F.3d 591, 593-94 (7th Cir. 2010) (characterizing absolute immunity as an affirmative defense); *Adair v. Sherman*, 230 F.3d 890, 894 (7th Cir. 2000) ("Issue preclusion is an affirmative defense."); *Taylor v. Sturgell*, 553 U.S. 880, 907 (2008) ("Claim preclusion, like issue preclusion, is an affirmative defense."). Pleadings can be amended, and Rule 15 provides that, when a party seeks leave to amend a pleading, the "court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); *Burton v. Ghosh*, 961 F.3d 960, 962 (7th Cir. 2020) ("Federal Rules of Civil Procedure 8(c) and 15 . . . govern the raising of new affirmative defenses."). "As a rule," courts "have allowed defendants to amend when the plaintiff had adequate notice that [an affirmative defense] was available, and had an adequate opportunity to respond to it despite the defendant's tardy assertion." *Jackson v. Rockford Housing Authority*, 213 F.3d 389, 393 (7th Cir. 2000).

The Seventh Circuit has instructed that courts "must be alert to the real and

11

practical harms that can result from failures to plead." *Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 478 (7th Cir. 2019). But the Court "may, however, exercise its discretion to allow a late affirmative defense if the plaintiff does not suffer prejudice from the delay." *Burton*, 961 F.3d at 965 (citing, in part, Fed. R. Civ. P. 15(a)(2)). Here, Plaintiffs do not suffer prejudice from the DCS Defendants' delay, and the interests of justice strongly favor granting the DCS Defendants' request.

Plaintiffs make two principal assertions as to how they would be prejudiced by these proposed affirmative defenses. First, the Plaintiffs claim that this "attempt to allege these affirmative defenses at this late stage deprives Plaintiff of the ability to fully develop their case against these affirmative defenses." (Dkt. 162 at 5). Second, Plaintiffs contend that the "DCS Defendants' decision to wait until [their depositions of the DCS Defendants] were complete to raise this issue unduly prejudices" them. (Dkt. 162 at 5). Neither assertion of prejudice, however, is particularly persuasive.

The Seventh Circuit in *Burton* explained that "unfair prejudice" means "that the late assertion of the defense causes some unfairness independent of the potential merits of the defense." 961 F.3d at 966; *see also Global Technology & Trading, Inc. v. Tech Mahindra Ltd.*, 789 F.3d 730, 732 (7th Cir. 2015) (defining "prejudice" as "a reduction in the plaintiff's ability to meet the defense on the merits"). This unfairness may be come from "the timing depriv[ing] her of notice and the opportunity to prepare to meet the defense through discovery." *Burton*, 961 F.3d at 966 (citing *Reed*, 915 F.3d at 482). Or the unfairness could stem from a "more

12

procedural form of prejudice: the *way* the defense was raised harmed the plaintiff by impairing her ability to respond effectively." *Id.* (citing *Venters*, 123 F.3d at 969).

Here, seeking leave to raise these affirmative defenses, while undoubtedly untimely, has not occurred without adequate notice. Nor does it deprive Plaintiffs' ability to meet them on the merits.

Plaintiffs' Motion for Summary Judgment deadline is June 20, 2023. (Dkt. 143). According to Plaintiffs, "the parties have been engaged in discovery in this case since February 2022." (Dkt. 162 at 5). And as both the Plaintiffs and the DCS Defendants point out, though with different emphasis, discovery is still open in this case, with the deadline for non-expert and liability discovery being July 20, 2023. (Dkt. 157 at 5; Dkt. 162 at 5). While these deadlines may be approaching, the Plaintiffs have made no argument beyond mere assertion as to what "written discovery related to these defenses" would be sprung upon them at this time. (Dkt. 162 at 5). Nor is the Court certain what additional discovery would be necessary when absolute immunity, claim preclusion, and issue preclusion are predominantly questions of law. In one form or another, these affirmative defenses have been at the forefront of this case since the defendants filed their motions to dismiss in September 2021. For at least claim and issue preclusion, it has been known since the DCS Defendants filed their motion to dismiss that they intended on raising claim and issue preclusion against Plaintiffs' claims. The DCS Defendants even went so far as to advantageously attach "an exhibit purporting to show the existence of a previous suit" to their motion to dismiss that Plaintiffs successfully had

13

stricken. (Dkt. 107 at 8 (citing Dkts. 30 & 86)). And Plaintiffs admit that an absolute immunity affirmative defense was the "understood . . . import of [their] allegations." (Dkt. 162 at 3).

That the DCS Defendants filed their answer and failed to assert the affirmative defenses they now seek leave to add does not mean Plaintiffs lacked sufficient notice that the DCS Defendants might pursue these defenses. *See Blaney v. United States*, 34 F.3d 509, 513 (7th Cir. 1994) (defenses raised in motions to dismiss may provide sufficient notice); *Robinson v. Sappington*, 351 F.3d 317, 332-33 (7th Cir. 2003) (topics of discovery may indicate plaintiff's sufficient notice affirmative defenses may be pursued).

For many of the same reasons that Plaintiffs argued the DCS Defendants did not demonstrate good cause for their delay in seeking to add these affirmative defenses, (*see* Dkt. 162 at 3-5), it is clear that Plaintiffs "had adequate notice" that the affirmative defenses "[were] available," and have "adequate opportunity to respond to [them] despite the defendant[s'] tardy assertion." *Jackson*, 213 F.3d at 393. Allowing the DCS Defendants leave to amend their answer does not substantively or procedurally prejudice Plaintiffs.

The Court sees the greater risk of prejudice befalls the DCS Defendants instead. *See* 6 Wright & Miller, *Federal Practice and Procedure* § 1487 (3d ed.) (updated Apr. 2023). ("In order to reach a decision on whether prejudice will occur that should preclude granting an amendment, the court will consider the position of both parties and the effect the request will have on them."). As the Plaintiffs point

out, "the DCS Defendants knew of these potential affirmative defenses when they filed their answer and chose not to assert them." (Dkt. 162 at 4). Courts are to likely find that affirmative defense have been "waived when it has been knowingly and intelligently relinquished and forfeited when the defendant has failed to preserve the defense by pleading it." *Burton*, 961 F.3d at 965 (citing *Reed*, 915 F.3d at 478). To not allow the DCS Defendants the opportunity to present potentially viable defenses against the Plaintiffs claims seems to only prejudice the DCS Defendants.

Rule 15(a)(2) instructs that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). And Rule 1 provides how the plain language of that instruction is to be "construed, administered, and employed." Fed. R. Civ. P. 1. "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and affect the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Woods v. Indiana Univ.-Purdue Univ. at Indianapolis*, 996 F.2d 880, 884 (7th Cir. 1993).

The "spirit and inclination of the rule favor[s] decisions on the merits." *Schiavone v. Fortune*, 477 U.S. 21, 27 (1986). Here, the DCS Defendants should be granted leave because "justice so requires." Fed. R. Civ. P. 15(a)(2).

## IV. Conclusion

For the foregoing reasons, the Court hereby **GRANTS** DCS Defendants' Renewed Motion for Leave to File Amended Answer and Affirmative Defenses, Dkt. [157]. The DCS Defendants are to file their Amended Answer and Affirmative Defenses (Dkt. 157-1) within four (4) days of this Order.

So ORDERED.

Date: 6/1/2023

M. Kendra Klump
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email