UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ERIKA MABES, | ) | |
| BRIAN MABES, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:21-cv-02062-JRS-MKK |
| | ) | |
| ANGELA MCFEELEY, | ) | |
| NATASHA DAVIS, | ) | |
| COURTNEY OAKES, | ) | |
| SAMANTHA KING, | ) | |
| HANNAH LYMAN, | ) | |
| KRISTIN MILLER, | ) | |
| COURTNEY CROWE, | ) | |
| JACLYN ALLEMON, | ) | |
| SHANNON THOMPSON, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Plaintiffs invoked the marital communications privilege while being deposed by Defendant Shannon Thompson. At the May 10, 2023 Discovery Conference, the parties agreed that a waiver of Plaintiffs' marital communications privilege had occurred but disputed the extent of the waiver. (Dkt. 161). The Court subsequently requested additional information and briefing centered on the scope of the waiver. (*Id.*; Dkt. 172). For the reasons set forth below, Plaintiffs have waived their marital communications privilege as it relates to the present case.[1]

---

[1] The Court emphasizes that this ruling is limited to the unique facts of this case.

1

## I.     Background

Plaintiffs Erika Mabes and Brian Mabes, on behalf of themselves and their minor children, ("Plaintiffs" or "the Mabes"), have sued employees of the Indiana Department of Child Services (the "DCS Defendants") and a doctor from Riley Hospital for Children, Dr. Shannon Thompson ("Defendant Thompson"), for a deprivation of their Fourth and Fourteenth Amendment rights. (Dkt. 1). The alleged deprivation arose in July 2019, when the DCS Defendants took custody of the Mabes' children without prior court order after one of their children received emergency medical care at Hendricks Regional Health and Riley Hospital for Children. (*Id.*). According to the Complaint, Defendant Thompson had been assigned by Riley to assist DCS with its medical evaluation of the Mabes' child. (*Id.* at 12).

This case was filed on July 19, 2021. (Dkt. 1). Discovery has been ongoing for years but is set to soon end. (*See* Dkt. 143 (fact discovery ends July 20, 2023)). On March 9, 2023, Defendant Thompson deposed Plaintiff Erika Mabes. (Dkt. 181 at 1). When asked about text messages between her and her husband, Plaintiff Erika Mabes (through counsel) objected and asserted the marital communications privilege. (*Id.*). Based on the record before the Court, this juncture appears to be the first time that Plaintiffs invoked the marital-communication privilege.

The text messages at issue were recovered from Plaintiff Brian Mabes' phone by the Hendricks County Sheriff's Office ("HCSO") pursuant to a search warrant. (Dkt. 176-1 (Deposition of Detective Tyree); Dkt. 182-2 (same)). The text messages

(or, more precisely, photographs of the messages) were then turned over to the DCS Defendants as part of the administrative proceeding being brought against the Mabes. (Dkt. 176-2 (Deposition of Defendant McFeeley)). The DCS Defendants relied on the messages in their investigation and administrative proceeding against the Mabes and were discussed by the Mabes during their challenge of the proceeding. (Dkt. 177-2; Dkt. 177-3; Dkt. 183-4; Dkt. 183-5; Dkt. 183-6).[2]

When Plaintiffs filed the present suit, the DCS Defendants produced the text messages as part of their initial disclosures on November 19, 2021. (*See* Dkt. 176 at 3). Plaintiffs also produced the texts messages in response to Defendant Thompson's discovery requests. (*See id.*). Defendant Thompson provides a more detailed history of these communications' presence in both the administrative and this proceeding, a history which appears supported by the record. (*See* Dkt. 181 at 2-4).

It was not until March 9, 2023, at the deposition of Plaintiff Erika Mabes, that Plaintiffs invoked the marital communications privilege with respect to certain questions. A discovery conference followed on May 10, 2023, at which the parties agreed that a waiver had occurred but disputed its extent. (Dkt. 161). Plaintiffs agree that they have waived their marital privilege communication privilege as to the following topics:

1. "The couple's agreement on [Plaintiff Brian Mabes'] drug use," when he was the only caregiver for the children;
2. Minor Child L.'s fall in May 2019;
3. Plaintiff Brian Mabes' " purchase of marijuana before moving to Indiana;"
4. Minor Child L.'s "goose egg" observed on June 29, 2019;

---

[2] The Court cites to exhibits that have been filed under seal in this case because no redacted public versions of these sealed exhibits were filed, *see* S.D. Ind. L. R. 5-11(d).

5. Minor Child L.'s "diagnosis at Riley on July 14, 2019;"
6. Bruises on Minor Child L. before July 19, 2019;
7. "The July 20, 2019 early morning events;"
8. "The couple's decision to remove life-sustaining care from" Minor Child L.;
9. Plaintiff Erika Mabes' "decision to resign her plastic surgery fellowship;"
10. "The couple's plan to divorce . . . and then to get back together after closure of the CHINS case;"
11. "The change in [Plaintiff Erika Mabes'] retirement plans."

(Dkt. 200 (Plaintiffs' May 12, 2023 Scope of Waiver Letter at 1-2).[3] Plaintiffs maintain the waiver does not extend the other text messages between the spouses that were photographed by HCSO and given to DCS and subsequently produced in this case. (*Id.* at 2-3). Finally, Plaintiffs maintain that they have not waived their privilege over their discussions about "their finances and [Plaintiff Brian Mabes'] employment outside their home." (*Id.* at 3).

In support of their position, Plaintiffs argue that the disclosure of the text messages to HCSO was "involuntary," and that any subsequent production of the communications to Defendants in this case "was [] not a disclosure that waived the privilege, as Defendants already possessed the communications." (Dkt. 176 at 5). Plaintiffs also invoke the remedies designed to protect individuals in criminal proceedings. (*Id.* at 4).

In response, Defendant Thompson argues that Plaintiffs waived their privilege by (1) failing to safeguard it following the HCSO's search, (Dkt. 181 at 5, 7), and (2) affirmatively using "their marital communications concerning all manner

---

[3] The Court has filed, under seal, Plaintiffs' May 12, 2023 submission provided to the Court pursuant to the Court's May 10, 2023 Minute Order, (Dkt. 161). That submission listed topics, text messages, and communications for which Plaintiffs conceded the marital communications privilege had been waived.

4

of topics to support their claims in this lawsuit," (*id.* at 6). The DCS Defendants join

in Defendant Thompson's arguments. (Dkt. 185 at 1). The DCS Defendants also

note that they "used and relied" on the text messages "during the assessment and

administrative appeal process." (*Id.*). Because Plaintiffs' suit challenges DCS's

actions, the DCS Defendants would be unfairly prejudiced if not allowed to

introduce the actual evidence on which they relied when justifying their decision-

making process. (*Id.* at 1-2).

## II.   Applicable Law

The marital communications privilege is recognized under federal common

law. *Wolfle v. United States*, 291 U.S. 7, 12 (1934). This privilege covers information

privately disclosed between spouses in the confidence of the marital relationship.

*United States v. Brock*, 724 F.3d 817, 820 (7th Cir. 2013). "The marital

communications privilege exists to ensure that spouses feel free to communicate

their deepest feelings to each other without fear of eventual exposure in a court of

law." *DR Distributors, LLC v. 21 Century Smoking, Inc*, 616 F. Supp. 3d 769, 781

(N.D. Ill. 2022) (citing *Brock*, 724 F.3d at 820-21). But "to protect the search for

truth," this privilege is construed narrowly. *United States v. Byrd*, 750 F.2d 585,

592 (7th Cir. 1984). Like all evidentiary privileges, the marital communications

privilege can be waived. *Brock*, 724 F.3d at 821.

The party invoking a privilege has the burden to establish all elements of the

privilege, including the lack of waiver. *United States v. Hamilton*, 19 F.3d 350, 354

(7th Cir. 1994). "[A] waiver of the marital communications privilege must be

'voluntary' only in the sense that the holder must realize that the once-confidential communication is being revealed. 'But if the holder intends to disclose the privileged material, [even] 'without realizing the impact' of the disclosure on the privilege, then there is a waiver.'" *Brock*, 724 F.3d at 822 (quoting 26A Wright & Miller, Federal Practice and Procedure § 5726 (1st ed.)).

The Seventh Circuit has long instructed that the court needs to balance the purpose that the privilege serves to protect and the probative discovery benefit the information the privilege is used to cover.

> [P]rivleges must be narrowly construed because they block the judicial fact-finding function. … [I]t is important to decide whether the privilege is applicable taking into account the particular factual circumstances of this case. … In making the case-by-case determination, it is helpful to weigh the need for truth against the importance of the relationship or policy sought to be furthered by the privilege, and the likelihood that recognition of the privilege will in fact protect that relationship in the factual setting of the case.

*Ryan v. Commissioner of Internal Revenue*, 568 F.3d 531, 542-43 (7th Cir. 1977). The Court enjoys a comfortable amount of discretion when balancing the "competing interests" bearing on whether to apply or deny an invocation of privilege during discovery. *Wades v. Ramos*, 26 F.4th 440, 445 (7th Cir. 2022); *United States v. BDO Seidman, LLP*, 492 F.3d 806, 814 (7th Cir. 2007).

## III.   Discussion

Those communications between the Mabes, made in confidence and outside the presence of others, are privileged. The marital communications privilege does not cover communications once there are any other parties involved. As to these principles, the parties agree. The issue at the center of this discovery dispute is

whether the privilege was waived after communications obtained pursuant to a search warrant in a state proceeding were used in that state proceeding and subsequently disclosed in this federal action.

As a preliminary matter, the Court finds that the initial "disclosure" of the text messages to HCSO was involuntary. Although Defendant Thompson argues that Plaintiffs discussed their marital communications with law enforcement and DCS personnel *before* the seizure and search of the cell phone, (*see* Dkt. 181 at 2-3), the record lacks a sufficient factual basis for the Court to conclude that Plaintiffs waived their privilege at that early stage. Rather, the limited facts before the Court suggest that the initial "disclosure" of the messages to HCSO and then to the DCS Defendants was, as Plaintiffs suggest, "involuntary."[4]

---

[4] Authority on this particular predicament is sparse. On the Court's review of the authorities, it is only clear that the Seventh Circuit has not provided definitive or explicit guidance on this matter. Defendant Thompson directs the Court to an instance where the Seventh Circuit, in a footnote, said that a party's "involuntary disclosure of privileged information to [a litigation adversary] does not constitute a waiver of privilege." *Am. Nat. Bank & Tr. Co. of Chicago v. Equitable Life Assur. Soc. of U.S.*, 406 F.3d 867, 877 n.5 (7th Cir. 2005) (citing to and quoting a treatise on attorney-client privilege for the principle that "courts generally hold that when production of privileged communications is judicially compelled, compliance with the order does not waive the attorney-client privilege"). Although helpful to this inquiry, that statement represented *dicta*. There are district courts within the Seventh Circuit that find privilege waived for documents produced "to the Department of Justice pursuant to subpoena." *In re Sulfuric Acid Antitrust Litigation*, 235 F.R.D. 407, 427 (N.D. Ill. 2006). But such cases are based on the Seventh Circuit's opinions on "selective waiver," and the Circuit's lack of an explicit ruling on the matter. *See Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, 244 F.R.D. 412, 432 (N.D. Ill. 2006) (relying on *Dellwood Farms, Inc., v. Cargill, Inc.*, 128 F.3d 1122, 1126-27 (7th Cir. 1997), to find selective waiver to voluntarily produce work-product to SEC not waived)). However, the Court did not come across a case within this Circuit discussing the exact scenario at play here: a party's invocation of privilege in a civil case over documents previously obtained by law enforcement authorities through a warrant. Nor did the parties provide one. The Ninth Circuit, however, has been explicit on the topic. "Although the privilege may be waived by the voluntary production of otherwise privileged documents, it is clear that the privilege was not lost through the government's discovery of the letter in the course of executing its search warrants." *United States v. de la Jara*, 973 F.2d 746, 749 (9th Cir. 1992) (citing *Transamerica Computer Co. v. Int'l Bus. Machines Corp.*, 573 F.2d 646, 651 (9th Cir. 1978)). The D.C. Circuit has adopted the Ninth Circuit's position. *See SEC v. Lavin*, 111 F.3d 921, 930 (D.C. Cir. 1997) (applying the marital communications privilege). From what the Court could find, the position adopted by the Ninth and D.C. Circuit appears at least consistent with what the Seventh Circuit has

The inquiry, however, does not stop there. What happened after the involuntary disclosure is just as important as the initial disclosure itself. And it is those next steps that ultimately doom Plaintiffs' argument.

In the days, months, and years following the DCS Defendants' receipt and use of the text messages, Plaintiffs took no apparent action at all to claw back, protect, or otherwise preserve their privilege. To the contrary, they affirmatively used the text messages and other marital communications throughout the DCS proceedings. (*See* Dkt. 177-2 (Sealed Addendum to E. Mabes' Declaration); Dkt. 177-3 (Sealed Declaration of B. Mabes); Dkt. 183-4 (Sealed Declaration of E. Mabes); Dkt. 183-5 (Sealed Mabes' 2021 Presentation prepared for administrative proceeding); Dkt. 183-6 (Sealed Photo of Text Messages Mabes Submitted in administrative proceeding)).

Nor, prior to the present dispute, did Plaintiffs take any reasonable steps to protect their asserted privilege after the initiation of this lawsuit. Again, to the contrary, they acted in a manner seemingly opposite of that which one would adopt if trying to guard one's private communications. For example, Plaintiffs re-produced the messages to Defendant Thompson (as opposed to the DCS Defendants, who

---

recently suggested about privilege and search warrants. *See United States v. Snyder*, No. 21-2986, 2023 WL 4011163 (7th Cir. June 15, 2023) (implying it is well understood that waiver of privilege is not instantaneous when materials are obtained by search warrant). Nevertheless, the Court finds that it is uniformly uncontroversial that "communications remain privileged as long as the holder has acted reasonably in attempting to protect them." *Lavin*, 111 F.3d at 930; *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 389 (7th Cir. 2008) ("claims of inadvertence are properly honored so long as appropriate precautions are taken.") (internal quotation marks omitted). As explained, it is Plaintiff's lack of attempt to protect the marital communications privilege that decides the issue, not whether the communications were first "disclosed" on a voluntary or involuntary basis.

already had the information). (*See* Dkt. 177-2 (exhibit showing Mabes Bates number); Dkt. 177-3 (Declaration of Brian Mabes reflecting Mabes Bates number); Dkt. 182-3 (Mabes' Responses to Defendant Thompson's First Set of Requests for Production showing Mabes' Bates numbers); Dkt. 183-6, 7, 11, 12, 12 (sealed exhibits showing Mabes Bates numbers)). They allowed the text messages to be introduced as an exhibit in the deposition of Detective Tyree. (Dkt. 182-2 (Excerpt of Detective Tyree Depositions)). They also relied on the text messages when responding to Defendant Thompson's interrogatories, (Dkt. 183-7 (sealed exhibit of Mabes' Responses to Defendant Thompson's Interrogatories)), and written discovery, (Dkt. 182-3 (Mabes' Responses to Defendant Thompson's Request for Production)). Moreover, both Plaintiff Erika Mabes and Plaintiff Brian Mabes openly testified about many of their marital communications during their respective depositions on March 9 and March 10, 2023. (*E.g.*, Dkt. 181 at 4 (citing Dkt. 182-1 & Dkt. 183-3)). It was not until that point in the case, nearly two years after its filing, that counsel invoked the privilege for the first time.[5]

In sum, prior to the present dispute, Plaintiffs made no effort to protect the communications they claim to be privileged.[6] The involuntary nature of the original disclosure is overshadowed by the clear lack of effort to protect the martial

---

[5] As of the date of the discovery conference on May 10, 2023, Plaintiffs had yet to produce a privilege log outlining any documents or other materials over which they were asserting privilege. (Dkt. 161 at 2).

[6] Had they done so, the issue before the Court might have been much more complicated. But as Defendant Thompson and the DCS Defendants point out, Plaintiffs instead injected these communications into this litigation. (Dkt. 181 at 6; Dkt. 185 at 1-2).

communications privilege.[7] And the lack of effort to protect this privilege is exemplified by the broad strokes of communications that the Plaintiffs concede have been waived due to unmitigated testimony during the Mabes' depositions. (Dkt. 200 at 1-2). The Court thus concludes that Plaintiffs have waived any marital communications privilege for the text messages photographed by HCSO and re-produced by Plaintiffs in this case.

This conclusion is reinforced by consideration of the nature of this case. Plaintiffs are challenging the reasonableness of the DCS Defendants' actions in the administrative (and appellate) proceedings. (*See* Dkt. 1 at 30-33 (Count I – violations of 42 U.S.C. § 1983)). Plaintiffs claim that their communications between are barred from further inquiry because "a party cannot disclose something to another that the other already know." (Dkt. 176 at 4 (citing *Brock*, 724 F.3d at 822)). To simultaneously challenge the DCS Defendants' decisions and seek to shield the factfinder from some of the facts underlying those decisions (*i.e.*, the text messages) frustrates the "search for truth." At the same time, belatedly cloaking the communications with the blanket of privilege will do seemingly little to restore or protect the marital relationship going forward. In balance, the policy interests underlying the privilege reinforce the Court's finding of waiver.

Having found the privilege waived for the text messages and related communications, the only remaining issue before the Court is whether Plaintiffs

---

[7] Mechanisms existed for Plaintiffs to raise their privilege objections prior to this point. *See, e.g.*, Dkt. 37 at 7-8 (specifying procedures for inadvertent production of privileged information); Fed. R. Civ. P. 26(b)(5), 26(c)(1)(D), 33(b)(4).

waived privilege regarding "their finance and [Plaintiff Brian Mabes'] employment outside their home." (Dkt. 200 at 3). Neither side develops its argument with regards to this specific topic. Absent evidence showing how this topic relates directly to the claims raised in this suit, the Court finds that no waiver has occurred here.

## IV.     Conclusion

Thus, the Court finds that the marital communications privilege has been waived for communications about (a) those topics expressly agreed to by Plaintiffs, (*see supra* Part I), and (b) the text messages photographed by HCSO and re-produced by Plaintiffs in this case. The privilege remains intact with regards to Plaintiffs' discussions of their finances and Plaintiff Brian Mabes' employment.

So ORDERED.

Date: 29 June 2023

M. Kendra Klump
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email