UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ERIKA MABES individually and on behalf of L.M., J.R.M., and J.A.M., minor children, BRIAN MABES individually and on behalf of L.M., J.R.M., and J.A.M., minor children,<br><br>                Plaintiffs,<br><br>     v.<br><br>ANGELA MCFEELEY,<br>NATASHA DAVIS,<br>COURTNEY OAKES,<br>SAMANTHA KING,<br>HANNAH LYMAN,<br>KRISTIN MILLER,<br>COURTNEY CROWE,<br>JACLYN ALLEMON,<br>SHANNON THOMPSON M.D.,<br><br>                Defendants. | No. 1:21-cv-02062-JRS-MKK |

**Order on Motions for Summary Judgment**

### I.     Introduction

This is a civil rights case about a child abuse investigation. After Erika and Brian Mabes brought their infant son L.M. to a hospital, the Indiana Department of Child Services ("DCS"), suspecting abuse in part because of Dr. Thompson's medical advice, seized custody of all three Mabes children and began an administrative prosecution of the Mabes parents. The Mabes claim DCS and its medical advisor violated their constitutional rights both in the initial seizure of the children and in the subsequent prosecution. The Court previously denied motions to dismiss from the DCS employee defendants, (ECF No. 28), and Dr. Thompson, (ECF No. 31), but granted a motion to

dismiss from one of Dr. Thompson's employers, IU Health, (ECF No. 26).  Now before the Court are DCS' and Dr. Thompson's Motions for Summary Judgment, (ECF Nos. 207, 213) and the Mabes' Motion for Partial Summary Judgment, (ECF No. 188).

## II. Legal Standard

The legal standard on summary judgment is well established:

> Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Skiba* [*v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018)] (quoting *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 [] (1986)). A theory "too divorced from the factual record" does not create a genuine issue of material fact. *Id.* at 721. "Although we construe all facts and make all reasonable inferences in the nonmoving party's favor, the moving party may succeed by showing an absence of evidence to support the non-moving party's claims." *Tyburski v. City of Chicago*, 964 F.3d 590, 597 (7th Cir. 2020).

*Marnocha v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 986 F.3d 711, 718 (7th Cir. 2021).  The Court applies that standard here.

## III. Discussion

This is a complex case, on both the law and the emerging facts.  The issues presented on these motions for summary judgment are best analyzed according to three guiding questions: (1) do preclusion doctrines forestall this case from reaching the merits? (2) if the merits are reached, do any of the alleged constitutional violations defeat immunity defenses? and (3) if claims survive, who could properly be held responsible?

A. Preclusion

DCS' administrative prosecution threw up various judicial and quasi-judicial orders that might trigger preclusion doctrines. Two days after DCS took custody of the Mabes children in July 2019 on a purported emergency, there was a state court hearing. That hearing resulted in an Order on Initial & Detention Hearing, (ECF No. 209-6), in which the state court approved the emergency seizure of the Mabes children and authorized their continued detention. Over the next few months, DCS pursued its investigation, which culminated in October 2019 with an "Assessment of Alleged Child Abuse or Neglect," (ECF No. 209-3): a list of allegations[1] against the Mabes parents. The same month, the Mabes stipulated to an Agreed Entry, (ECF No. 209-7), in which, without resolving the "substantiations," they agreed to a fact finding that their children were "Children in Need of Services" ("CHINS") under Indiana law. That Entry was ratified by the state court. (ECF No. 209-8). The substance of the allegations in the "Assessment" were not heard in the state court, then or at any other time. But the Agreed Entry preserved Erika Mabes' right to an administrative appeal, which she took, and in which she eventually prevailed, as far as the administrative apparatus allows: the "substantiations" against her were recategorized as "unsubstantiated." (ECF No. 229-16.)

Dr. Thompson argues that the Mabes admitted in the Agreed Entry that the State was justified in seizing their children, so, by issue preclusion or judicial estoppel, they

---

[1] DCS, heedless of the usual distinction between unproven allegations and proven convictions, chooses to call its allegations "substantiations," despite the obvious potential for confusion and abuse.

3

should not be able to make constitutional claims here. DCS joins those arguments and points as well to the Order on Initial & Detention Hearing. (ECF No. 209-6.)

The Court uses Indiana preclusion law to decide the question of issue preclusion. *de Lima Silva v. Dep't of Corr.*, 917 F.3d 546, 562 (7th Cir. 2019) (citing 28 U.S.C. § 1738; *Adams v. Adams*, 738 F.3d 861, 865 (7th Cir. 2013)). In Indiana, issue preclusion applies to "final" decisions where "the party in the prior action had a full and fair opportunity to litigate the issue" and it is fair "to apply [the doctrine] given the facts of the particular case." *Taylor v. City of Lawrenceburg*, 909 F.3d 177, 181 (7th Cir. 2018) (quoting *Indianapolis Downs, LLC v. Herr*, 834 N.E.2d 699, 705 (Ind. Ct. App. 2005)). The burden is on Dr. Thompson and DCS to show preclusion is appropriate. *State v. Barnett*, 176 N.E.3d 542, 553 (Ind. Ct. App. 2021), *trans. denied*, 180 N.E.3d 933 (Ind. 2022).

There are two reasons issue preclusion is inappropriate here.

First, neither Dr. Thompson nor DCS has shown the Order on Initial Hearing or the Agreed Entry are "final." The Agreed Entry preserves the right to appeal; Erika Mabes took an appeal; eventually she prevailed, and DCS "unsubstantiated" the accusations against her. (Crowe Decl. 5, ECF No. 208-5.) DCS once asserted that the outcome of that appeal is irrelevant to the former proceedings. (Br. Supp. M. Dismiss 4–5, ECF No. 29). But how can that be? The "substantiations" are the grounds for taking custody of children or declaring them CHINS; if a later administrative appeal overturns some or all of the "substantiations," then the earlier orders cannot stand

4

as issued, even if there was no direct amendment or further proceeding in the state court proper.

Second, and more fundamentally, Dr. Thompson and DCS have not shown the Mabes had a "full and fair" opportunity to litigate the issues in the state court and administrative proceedings. For the Mabes to have had a "full and fair" opportunity to litigate there, the proceeding must have comported with constitutional due process. *Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 481 (1982) (explaining only "state proceedings [that] satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause" are entitled to preclusive effect in federal court); *Jones v. City of Alton, Ill.*, 757 F.2d 878, 884 (7th Cir. 1985) (same). But a violation of constitutional due process is just what the Mabes allege here. So, Dr. Thompson and DCS cannot prevail on issue preclusion without prevailing on the merits—and, as will be seen, it is too soon to say whether they will. (The rule is generalizable: the defendant in a due process case will never be able to use the challenged proceeding to preclusive effect without first winning the substantive case—and at that point, of course, preclusion is gratuitous.) The Indiana Supreme Court is aware of the interplay here: while CHINS proceedings can have preclusive effect, *Matter of Eq.W.*, 124 N.E.3d 1201, 1211 (Ind. 2019), the effect is not "without limits," *id.* at 1212. The Court explains that because the ostensible purpose of DCS intervention " is to protect children, not punish parents," parents are supposed to receive "significant procedural safeguards," without which violations of due process "are of paramount concern." *Id.*

5

at 1209. In that Court's judgment, CHINS proceedings are "ripe for potential abuse by the State." *Id.* at 1211.

Judicial estoppel is not appropriate here, either. That equitable doctrine prevents litigants from prevailing on inconsistent positions at different stages in a case. *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001); *Meridian Ins. Co. v. Zepeda*, 734 N.E.2d 1126, 1133 (Ind. Ct. App. 2000). The Mabes did not prevail on inconsistent positions in state court: the state court never found in their favor on either detention or the CHINS finding. The only proceeding in which they could be said to prevail—the "unsubstantiation" of the accusations against Erika—was litigated on the exact theory advanced here: that the DCS charges were groundless and based on what medical diagnosticians call "premature closure" and "anchoring errors." Brian F. Mandell, "Cognitive Errors in Clinical Decision Making," Merck Manual, https://www.merckmanuals.com/professional/special-subjects/clinical-decision-making/cognitive-errors-in-clinical-decision-making. The Court sees no "risk of inconsistent court determinations." *New Hampshire*, 532 U.S. at 751.

B. Merits

This Court has already discussed the alleged constitutional violations. (Order 11–16, ECF No. 107.) In short, it is a clearly established Fourteenth Amendment violation to take children into custody without a reasonable suspicion[2] of abuse, *Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 478 (7th Cir. 2011); it is a clearly established Fourth Amendment violation to take children without probable cause or

---

[2] For a discussion of the Seventh Circuit's path to the holding that the state's seizure of children requires only a reasonable suspicion, *see* Order 13 n.1, ECF No. 107.

emergency, *Siliven v. Indiana Dep't of Child Servs.*, 635 F.3d 921, 926 (7th Cir. 2011) (citing *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1010 (7th Cir. 2000)); and it is a clearly established Fourteenth Amendment violation to misrepresent facts in a detention hearing or to afford only "sham procedures" to challenge the state action, *Hernandez*, 657 F.3d at 486 (quoting *Brokaw*, 235 F.3d at 1020) (unconstitutional to misrepresent facts), *Schacht v. Wisconsin Dept. of Corrections*, 175 F.3d 497, 503 (7th Cir.1999) ("[S]ham procedures do not satisfy due process.").

The Mabes' injured child was lifelined to Riley Hospital after an allegedly disastrous failed treatment attempt at a local hospital. (Erika Mabes Decl. 11–12, ECF No. 229-1.) The doctors at Riley saw a gravely injured infant and brought in Dr. Thompson to consult. (Thompson Decl. 2, ECF No. 217.) From there, DCS and Dr. Thompson claim they made a reasonable diagnosis of abuse, made a reasonable decision to take emergency custody of the children, and followed reasonable procedures in the subsequent investigation and administrative proceeding. Maybe so. But here is the crux: the Mabes had and have a plausible, innocent alternative explanation for the injuries that DCS and Dr. Thompson insisted were abusive— namely, that those were iatrogenic injuries from the local hospital. (Erika Mabes Decl. 12, ECF No. 229-1 (averring she told the treating doctors, including Dr. Thompson, of the iatrogenic injuries on the night of the emergency).) Thus the legal effect of all DCS' and Dr. Thompson's actions—from the night of the emergency to the end of the administrative appeals—could turn on a single disputed factual question of credibility: ought DCS and Dr. Thompson to have had second thoughts? *Stinson v.*

7

*Gauger*, 868 F.3d 516, 526 (7th Cir. 2017) ("[W]hether their opinions were intentionally fabricated or honestly mistaken is a question of fact, not a question of law."). If a jury were to believe that DCS and Dr. Thompson should have credited, or at least further considered, the Mabes' innocent explanation of events, then their subsequent actions are unconstitutional—an innocent explanation dissolves any reasonable suspicion, removes the emergency, and prevents the administrative prosecution.[3]

That factual dispute means qualified immunity is not appropriate: qualified immunity does not protect actions that violate clearly-established rights, *Anderson v. Creighton*, 483 U.S. 635, 638–39 (1987), and the actions here might, depending on a jury's resolution of disputed facts, violate clearly established rights.

Without qualified immunity, absolute immunity—which is harder to obtain—is also unavailable. Absolute immunity is fundamentally incompatible with constitutional order: it negates the remedy and so obliterates the right. *Imbler v. Pachtman*, 424 U.S. 409, 433–34 (1976) (White, J., concurring in the judgment) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 243 (1974)) ("[To] extend absolute immunity to any group of state officials is to negate Pro tanto the very remedy which it appears Congress sought to create [with § 1983]."). So, while absolute immunity does exist, it

---

[3] That is not the only way a reasonable jury could find for the Mabes: one could credit their argument that there was no "emergency" threatening the children when one was in hospital and the other two were safe with their grandmother. (Pls.' R. to DCS 13–14, ECF No. 231.) And, contrariwise, a jury could find against the Mabes' argument that the defendants should have believed their innocent explanation on the night in question and still find the continued detention of the children was unreasonable. *See Hernandez*, 657 F.3d at 479–80 (additional facts can cause probable cause to "dissipate"). But it only takes one possibility to survive summary judgment.

is disfavored, *Burns v. Reed*, 500 U.S. 478, 487 (1991), and any argument for its extension must be advanced and convincingly demonstrated by the proponent, *Malley v. Briggs*, 475 U.S. 335, 340 (1986) (citing *Butz v. Economou*, 438 U.S. 478, 506 (1978)).  The Supreme Court has never held that DCS employees are entitled to absolute immunity, *Hoffman v. Harris*, 511 U.S. 1060 (1994) (Thomas, J., dissenting from denial of cert.), and it makes clear that any extension of the doctrine must be rooted in a common-law immunity existing in 1871, when § 1983 was enacted, *Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993); *Kalina v. Fletcher*, 522 U.S. 118, 132 (1997) (Scalia, J., concurring); *Hoffman*, 511 U.S. at 1060.  There are, after all, no immunity exceptions in the law as Congress wrote it.  *Buckley*, 509 U.S. at 268.  As this Court previously discussed, (Order 24–26, ECF No. 107), the Seventh Circuit has only once, in *Millspaugh v. Cnty. Dep't of Pub. Welfare*, considered immunity doctrine in the DCS context.  937 F.2d 1172, 1176 (7th Cir. 1991).  There, the Seventh Circuit relied on analogies with criminal prosecutions to extend absolute immunity to certain in-court behavior by DCS workers.  The analogy between criminal prosecution and DCS proceedings is imperfect, not least because so much of a DCS intervention is done administratively, with minimal procedural protections for the accused and with the agency itself serving as investigator, prosecutor, and judge. And *Millspaugh* did not analyze the historic precedent for social-worker immunity, which intervening Supreme Court cases demand.  In practice, then, the continued vitality of *Millspaugh* is questionable; the Seventh Circuit has decided subsequent DCS cases without analyzing absolute immunity, even where it would have disposed of the case.

9

*See Hernandez*, 657 F.3d at 486–87 (finding triable issue of fact on procedural due process claim that DCS workers misrepresented facts in state court hearings); *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1021 (7th Cir. 2000) (same). And this Court "must follow what the [Seventh Circuit] does, and not just what it says, especially when what it says is not altogether consistent from case to case." *Hall v. Simcox*, 766 F.2d 1171, 1174 (7th Cir. 1985). DCS and Dr. Thompson have not made the clear showing that would justify this Court's extension of absolute immunity—in contravention of § 1983 as enacted by Congress—to a novel context.

Even if *Millspaugh* does remain in force, factual disputes make it impossible to tell which of the Mabes' claims would fall under its grant of immunity. As the Court detailed in its earlier Order, (ECF No. 107 at 25), that case preserves a distinction between investigative and prosecutorial functions, with only the latter entitled to absolute immunity. *Cf. Kalina*, 522 U.S. at 132 (Scalia, J., concurring) (explaining how the "function" approach uneasily approximates, but fails to replicate, the contours of 1871 immunity law). The line between investigation and prosecution can be unclear at any time, *Manning v. Miller*, 355 F.3d 1028, 1031 (7th Cir. 2004) ("The law regarding immunity is very fact dependent, and the various facts courts have considered reveal a spectrum of behavior that has ultimately been categorized as immune or not immune."), and is especially so here, where DCS investigates and prosecutes all at once. If a jury finds the Mabes' contentions credible, DCS' post-detention scramble to justify its July 2019 actions could be regarded as an after-the-fact investigation—more of a police function, so not absolutely immune—or it could

10

agree with DCS, which characterizes that time as mere elaboration of a prosecution already begun—which would be absolutely immune.

In sum, a jury that agreed with the Mabes on key credibility disputes would be able to find violations of clearly established rights that occurred outside of any colorable claim to qualified or absolute immunity. The factual dispute precludes summary judgment on immunity grounds.

### C. Responsibility

The remaining question is whom among the defendants a jury could properly hold responsible if it were to find constitutional violations here. Only those "whose conduct is 'fairly attributable to the State' can be sued as a state actor under § 1983." *Filarsky v. Delia*, 566 U.S. 377, 383 (2012) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)). And among state actors, only those who are personally responsible for the constitutional tort can be held to account for it. *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017).

Here, the DCS employees are state actors for certain. Dr. Thompson claims she is not a state actor; the Mabes move for summary judgment on this sole issue, claiming that she is. The Court already analyzed the issue on the motions to dismiss, (Order 17–22, ECF No. 107), and that analysis remains valid at this later procedural stage. Whether or not Dr. Thompson actually is, or may be "fairly treated" as, a state actor is a fact-intensive question. *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001); *L.P. v. Marian Cath. High Sch.*, 852 F.3d 690, 696 (7th Cir. 2017) (state actor determination rests on evidence of concerted

action between state and individual).  Here the Court needs jury factfinding to resolve the dispute.  On the one hand, Dr. Thompson claims to have dealt with the injured Mabes child only in her role as a treating physician at a private hospital.  On the other hand, she came to the case as a child abuse evaluator through a special state-university investigative team and worked closely with DCS in preparing and prosecuting their investigation.  A reasonable jury could take those facts either way.  *See, e.g.*, *Goetz v. Mt. Sinai Hosp. Corp.*, No. 91 C 5723, 1992 WL 162975 (N.D. Ill. July 7, 1992) (contrasting mere "medical examinations" with "investigation of suspected child abuse, a function which traditionally has been the exclusive prerogative of the state").  No summary judgment is appropriate in either direction.

As to personal responsibility, DCS argues that Lyman was the sole employee involved in the emergency seizure of the Mabes children; that Lyman and Davis were the only employees involved in preparing the "preliminary inquiry"[4] and CHINS petition; and that McFeeley and Lyman were the only employees involved in making the "substantiations." (DCS Br. Supp. M. Sum. J. 21–22, ECF No. 210.)  The record does not support those arguments.  Oakes and Davis were the DCS employees handling the initial investigation of the Mabes on the night of the emergency. (Preliminary Inquiry 4–5, ECF No. 209-13.)  The results of Oakes' investigation went into the preliminary inquiry.  (*Id.*)  McFeeley took Davis' input in preparing her "substantiations." (McFeeley Decl. 1, ECF No. 208-3.)  Because "an official causes a

---

[4] "Preliminary inquiry" is another bit of DCS jargon that belies its actual nature.  The "inquiry" is not an inquiry but an affidavit of facts supporting the charges ("substantiations") DCS wants to prosecute.

12

constitutional violation if [s]he sets in motion a series of events that defendant knew or reasonably should have known would cause others to deprive plaintiff of constitutional rights," she can be held responsible "if she acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge or consent." *Brokaw*, 235 F.3d at 1012. The DCS investigation, accusation, prosecution, and appeal form one sequence of events. That sequence was potentially foreseeable by the DCS employees and by Dr. Thompson as a regular collaborator, so a jury could properly find that the participants in the initial stages were responsible for the later. *Id.* DCS has not shown that any of its employees may be excused on summary judgment.

## IV. Conclusion

Preclusion doctrines do not forestall this case. On the merits, material factual disputes require jury resolution. Summary judgment is inappropriate, and the motions seeking it, (ECF Nos. 188, 207, 213), are **denied.**

**SO ORDERED.**

Date: 12/22/2023

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Carlton Wayne Anker
Lewis and Wilkins LLP
anker@lewisandwilkins.com

Brad A. Catlin
Williams Law Group, LLC
brad@williamsgroup.law

Stephanie L. Gutwein
FAEGRE DRINKER BIDDLE & REATH LLP (Indianapolis)
stephanie.gutwein@faegredrinker.com

Ryan Michael Hurley
FAEGRE DRINKER BIDDLE & REATH LLP (Indianapolis)
ryan.hurley@Faegredrinker.com

Paul Owen Mullin
LEWIS AND WILKINS LLP (Indianapolis)
mullin@lewisandwilkins.com

Eric Ryan Shouse
Lewis And Wilkins LLP
shouse@lewisandwilkins.com

Ronald J. Waicukauski
Williams Law Group, LLC
ron@williamsgroup.law

Liam Williams
Faegre Drinker Biddle & Reath LLP
liam.williams@faegredrinker.com

William Dean Young
Lewis And Wilkins LLP
young@lewisandwilkins.com